**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ZINO DAVIDOFF SA,

Plaintiff,

v.

CVS CORPORATION,

Defendant.

06 Civ. _____

## DECLARATION OF LISA PEARSON IN SUPPORT OF
## PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

I, Lisa Pearson, hereby declare as follows:

1.      I am a member of the bar of the state of New York and a partner in the firm Kilpatrick Stockton LLP, attorneys for Plaintiff Zino Davidoff SA ("Zino Davidoff"). I am a litigator specializing in trademark, copyright and unfair competition matters and related areas of the law. My law firm and I represent owners of many famous trademarks. We are familiar with the law dealing with infringements, and in particular the problems of attempting to stop the sale of products bearing counterfeits of famous marks.

2.      I submit this declaration based on my personal knowledge in support of Plaintiff's motion for a temporary restraining order and preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure and for expedited discovery pursuant to Rules 26(d), 33(a) and 34(b) of the Federal Rules of Civil Procedure.

3.      As demonstrated by the accompanying affidavits of Christian Schaffner, Guido Baumgartner, Michael Paviour and Ian Shirley, defendant CVS Corporation ("CVS") is trading in blatant counterfeits of Plaintiff's registered trademarks. Further, CVS is a repeat offender.

This is the third time we have found it selling counterfeit DAVIDOFF COOL WATER products in its stores. We no longer believe CVS's assurances that it will cooperate and voluntarily stop selling such counterfeits.

4.      The Trademark Anti-Counterfeiting Act of 1984, 15 U.S.C. § 1116(d), authorizes severe penalties, including *ex parte* seizure, in counterfeiting cases. In this case, due to the fact that CVS is a well-established company, Zino Davidoff has decided not to pursue an *ex parte* seizure order. This does not mean that Defendant's conduct is any less damaging than in the typical counterfeiting case.

5.      As an alternative to *ex parte* seizure, Zino Davidoff seeks the immediate imposition of a temporary restraining order and an order of expedited discovery in advance of a preliminary injunction hearing. These remedies are necessary in order to prevent Defendant's actions from continuing to cause Plaintiff severe, irreparable harm. In particular, a temporary restraining order freezing Defendant's inventory, store stock and records is necessary to prevent Defendant from selling off or otherwise disposing of evidence, dumping the product at discount houses or destroying it, and from destroying records relating to its unlawful acts. In the experience of our firm and our clients, it is not unusual for defendants in counterfeiting and infringement actions to take such measures in order to escape the civil and criminal penalties available under the Federal Trademark Act and the Trademark Anti-Counterfeiting Act of 1984 and to frustrate the trademark owner's efforts to stop the unlawful activity and shut it down at the source.

6.      Plaintiff also seeks expedited discovery pursuant to Rules 26(d), 33(a) and 34(b) of the Federal Rules of Civil Procedure. Although we have already gathered compelling evidence of Defendant's illegal activities, which are causing irreparable harm, we do not know

2

the full extent and nature of Defendant's enterprise.  For example, our investigators have purchased counterfeit DAVIDOFF COOL WATER men's fragrance, but we must still determine whether Defendant is also selling counterfeits of Plaintiff's other fragrance products.  In addition, Plaintiff requires discovery of the source(s) of Defendant's counterfeit DAVIDOFF COOL WATER fragrances, whom it may be appropriate to add as defendants in this action. Without this information, Plaintiff will not be able to stop the unlawful activity at its source or stop the sale of counterfeit DAVIDOFF COOL WATER fragrances to consumers by retailers to whom Defendant may be distributing the products for re-sale.

7.      No prior request for the relief sought herein has been made.

8.      As noted above, this case has a history.  On September 9, 1998, on behalf of Zino Davidoff (then part of Davidoff & Cie SA), I wrote a letter to Zenon P. Lankowsky, the General Counsel of CVS Corporation, concerning counterfeits of DAVIDOFF COOL WATER eau de toilette bearing the production code number 0707283148, one of which was purchased at a CVS store in Paramus, New Jersey.  A copy of that letter is annexed as Exhibit A.   In response, I received a call from Christina Egan, a CVS in-house lawyer, on or about September 10, 1998, who assured me that CVS had no interest in selling counterfeit merchandise and was willing to provide the name of CVS's supplier.  She expressed some hesitation about pulling merchandise off of the shelves based solely on the number we provided I asked her to identify what other information CVS required to satisfy itself that the products were counterfeits and told her we would endeavor to supply it.  I sent follow-up letters on September 16 and 25, 1998, annexed as Exhibits B and C, respectively.

9.      On September 29, 1998, I received a voicemail message from Ms. Egan confirming that there was no other product with the suspect production code in CVS's Paramus

US2000 9647046.2

store, but stating that CVS was not prepared to provide the name of its supplier voluntarily. I

sent her yet another letter, dated October 5, 1998 and annexed as Exhibit D, again insisting on

identification of CVS's supplier.

10.     Eventually, CVS did disclose the name of its suppliers, and we pursued these

leads. By letter dated March 31, 1999, annexed as Exhibit E, I requested additional information

from CVS to see what, if any, additional information it had regarding its sources. We did not

receive any useful information but, because a spot check of CVS stores at the time did not

disclose any other counterfeit products, we did not take further action against CVS at that time.

11.     In or about September 2005, another sample of counterfeit DAVIDOFF COOL

WATER was found at a CVS store in Fort Lauderdale, Florida. On October 19, 2005, I sent a

demand letter to Douglas A. Sgarro, Chief Legal Officer of CVS, a copy of which is annexed as

Exhibit F. This letter provided detailed information on how to detect counterfeit and unlawful

gray market Davidoff fragrances.

12.     On or about November 4, 2005, I received a voicemail message from Christina

Egan, saying she would be responding to my demand letter and requesting additional

information. I then received a letter dated November 7, 2005, a copy of which is annexed as

Exhibit G, in which CVS stated that it would remove the product from its shelves and send us

samples for inspection.

13.     In numerous follow up telephone calls, e-mail exchanges and correspondence, I

continued to try to negotiate an acceptable resolution with Ms. Egan. Because CVS was

evidently confused as to how to detect the counterfeit products, I sent a letter dated January 24,

2006, annexed as Exhibit H, again providing criteria for identifying counterfeits. I resent that

letter with my follow-up letters of February 28 and April 6, 2006, annexed as Exhibits I and J,

4

requesting a response. I eventually received a voicemail message from Ms. Egan on April 11, 2006, a transcript of which is annexed as Exhibit K, in which she said that they were not finding anything out of the ordinary in their inventory review and did not know how to proceed. I sent her an e-mail on April 12, 2006 annexed as Exhibit L, requesting confirmation of a number of specific facts. There followed a lengthy exchange of follow-up e-mails, as well as telephone calls, during the period from April to June. On or about July 25, 2006, Ms. Egan advised that CVS was in the process of a review of its inventory and requested electronic copies of our letters of October 19, 2005 and January 24, 2006 to provide to the people who would be conducting the inspections, which we supplied by e-mail dated July 25, 2006 and annexed as Exhibit M.

14.     On August 17, 2006, I received a call from Ms. Egan reporting that CVS had completed its inventory review and had not found any suspect DAVIDOFF COOL WATER products. She said she would send us a letter advising us of that fact and that CVS would only be buying product from two allegedly authorized distributors, Sovereign and Selective Distribution International. She asked us to confirm that the latter was an authorized distributor. In a subsequent exchange of e-mail correspondence, annexed as Exhibit N, I advised CVS that Selective Distribution was not an authorized distributor.

15.     The letter Ms. Egan had promised on August 17, 2006 finally arrived—two months later. By letter dated October 16, 2006 (annexed as Exhibit O), Ms. Egan advised me that CVS found no suspected counterfeits through its inventory review and stated that "CVS will purchase the product only from vendors we know to be supplying legitimate product without risk of compromise to the integrity of the product. This may include your suggested vendors, Sourveign, or Selective Distribution International Inc." I considered this last statement disingenuous, as I had previously advised Ms. Egan that Selective Distribution was not an

US2000 9647046.2

authorized distributor.  I therefore sent her a letter dated November 2, 2006, annexed as <u>Exhibit</u>

<u>P</u>, stating that while we genuinely hoped CVS's undertakings would eliminate its sales of

counterfeit products, "Zino Davidoff SA will not tolerate CVS's sale of infringing DAVIDOFF

fragrances in the future.  Now that we have provided CVS with the tools to identify counterfeit

and unlawful gray market DAVIDOFF products, CVS has a duty to check the products it is

selling to insure that they are genuine.  We remain willing to assist in authenticating product

should any questions arise."

16.     On November 22 - 26, 2006, my client's investigator once again found counterfeit

DAVIDOFF COOL WATER products for sale at CVS—at five different CVS stores.  According

to the web page from the www.cvs.com web site annexed hereto as <u>Exhibit Q</u>, CVS has

approximately 6,200 stores in 43 states.  Because our efforts to negotiate with CVS on two prior

occasions have been inordinately long, drawn-out, expensive, and ultimately unsuccessful, and

because CVS has obviously failed to implement proper measures to stop the sale of counterfeits

despite its assurances, Zino Davidoff has instructed me to file this action.

17.     In a telephone call at 10:05 a.m. this morning, December 20, 2006, I advised

Christina Egan, CVS's Assistant General Counsel, by voicemail that we were planning to file

this motion and invited her to return my call.  She returned my call at 10:23 a.m. and advised me

that CVS will issue a product withdrawal this week, but this might take some time to implement.

Based upon our past experience with CVS, we cannot rely on this mere assurance and require the

force of a court order to insure that CVS will stop its sales of a counterfeit DAVIDOFF COOL

WATER as soon as possible.

US2000 9647046.2

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Date:  New York, New York
      December 20, 2006

Lisa Pearson

7