**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ZINO DAVIDOFF SA,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>CVS CORPORATION,<br><br>　　　　　　Defendant. | 06 Civ. _____ |

**DECLARATION OF GUIDO BAUMGARTNER IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION**

I, Guido Baumgartner, hereby declare as follows:

1.　　　I am an attorney licensed to practice in Germany and am Director of International Market Control at Coty Prestige Lancaster Group GmbH in Mainz, Germany. Coty Prestige Lancaster Group GmbH is owned by Coty GmbH in Mainz, Germany, which is an affiliate of Coty Inc. Coty Inc. is also the indirect owner of Lancaster BV, which is the exclusive fragrance licensee of Plaintiff Zino Davidoff SA ("Zino Davidoff"). Lancaster Group US LLC, which is also owned by Coty Inc., is the authorized U.S. distributor of DAVIDOFF fragrances (Coty Prestige Lancaster Group GmbH, Coty GmbH, Coty Inc, Lancaster BV and Lancaster Group US LLC are collectively referred to as "Lancaster"). I am responsible for Lancaster's world-wide protection of the selective distribution system and anticounterfeiting activities.

2.　　　As Zino Davidoff's exclusive fragrance licensee, Lancaster works with Zino Davidoff to manufacture, sell and promote DAVIDOFF COOL WATER fragrances for men and women. Plaintiff launched COOL WATER cologne for men in the U.S. in 1991 and launched the women's COOL WATER companion fragrance in the U.S. in 1997.

**DAVIDOFF COOL WATER FRAGRANCES**

3.      Both the men's and women's DAVIDOFF COOL WATER fragrances have been highly successful, with sales expanding every year and total worldwide sales now exceeding $100 million annually.  In the U.S., total retail sales of DAVIDOFF COOL WATER fragrances exceeded $73 million in 2004.  As of 2004 DAVIDOFF COOL WATER was among the top 10 best-selling men's fragrances in the United States for 3 of the past 5 years.

4.      Lancaster is the sole authorized distributor of DAVIDOFF COOL WATER fragrances in the U.S., as well as other countries.  Lancaster advertises the DAVIDOFF COOL WATER fragrances in virtually all available media in the U.S.  In 2045, Lancaster spent in excess of $8.9 million dollars on such advertising.

5.      The trade dress of DAVIDOFF COOL WATER for men consists of a shiny aqua blue box containing a rectangular, aqua blue bottle imprinted with the name of the fragrance either in a flowing script (old logo) or a distinctive sans serif font (new logo), as shown below:

Old Logo:                              New Logo:



Photographs of the trade dress of DAVIDOFF COOL WATER for men with the old logo are annexed as Exhibit A.

**PRODUCT CODING TO INSURE QUALITY**

6.      Lancaster's parent company Coty Inc. ("Coty") produces authentic COOL WATER fragrances at its factory in Chartres, France.  Coty marks each bottle of eau de toilette

2

as well as its outer packaging with a code (the "Production Code") – either a "batch" code or

unique code – at the time of production.  The placement of Production Code is clearly shown on

the photographs reproduced below, which are used for training Customs Officers to identify

counterfeit products.

<b>Counterfeits have either no Production Code or<br/>
the same Production Code on all boxes</b>



US2000 9646903.3

7.     The Production Code allows Lancaster and Zino Davidoff to track the origin and/or product "batch" of any bottle of fragrance, permitting them to identify counterfeits, to control unauthorized sales by distributors outside of their respective licensed territories or to order a product recall or other corrective action in the event a product defect should arise. Lancaster and Zino Davidoff exercise strict quality control over the production of COOL WATER fragrance products, their bottling, their completed packaging, and their distribution exclusively by Lancaster in the U.S. market.

8.     The Production Code is one of the cornerstones of Zino Davidoff and Lancaster's international quality control system.  Obliterating or tampering with these codes destroys our ability to insure the high quality consumers expect in our fragrances and potentially puts consumers at risk by making a product recall impossible.  Because of the potentially serious health and safety risks, consumers expect that a defective topical cosmetic product will be recalled immediately if it is defective or dangerous.  Zino Davidoff and Lancaster have no ability to track and "batch" similarly defective products or to correct other quality control problems where the products involved lack the original Production Code.

9.     Zino Davidoff and Lancaster wage an ongoing battle against counterfeiting of DAVIDOFF COOL WATER fragrances, and also take action against marketers of genuine COOL WATER fragrances who remove, obliterate or mutilate the Production Code.  The importance of our Production Codes was explicitly recognized in the case of *Davidoff & Cie, SA v. PLD International Corp.*, No. 00-14368, 2000 WL 1901542 (S.D. Fla. Sept. 25, 2000), *aff'd*, 263 F.3d 1297 (11th Cir. 2001), in which the Court of Appeals for the Eleventh Circuit affirmed a judgment in our favor in an action we brought to stop sales of so-called "grey market" products.  In this case the court held that obliteration of the Production Code constituted a

4

material difference from our genuine products and therefore warranted relief, including an injunction, under U.S. trademark laws. Copies of the district court and appellate court opinions in the *PLD* case are attached hereto as Exhibit B.

## SALES OF COUNTERFEITS BY DEFENDANT

10.    We have experienced repeated problems with the sale of counterfeit COOL WATER fragrances by CVS Corporation ("CVS"), the defendant in this action.

11.    In late November 2006 we discovered, through the private investigation firm Grants International ("Grants"), that CVS was selling counterfeit COOL WATER fragrances in multiple CVS stores. Michael Paviour, a Grant investigator, purchased seven different samples of DAVIDOFF COOL WATER men's eau de toilette from CVS Pharmacies in Michigan and Illinois. I have personally examined these seven samples and concluded they were counterfeit because:

a.    The Production Codes are not unique.

b.    The Production Code also appears on an adhesive strip on the bottom of each bottle of authentic DAVIDOFF COOL WATER. On CVS's counterfeit fragrances, this adhesive strip is a shiny silver or chrome color, whereas on authentic DAVIDOFF COOL WATER bottles the strip is grey in color and is not shiny.

c.    The DAVIDOFF COOL WATER mark appears on the box of authentic products in a distinctive script font, in a white square offset from the aqua blue box by a black border. On CVS's men's COOL WATER fragrances, the mark is printed in a slightly bolder script font, and the black border surrounding the white square is also slightly bolder.

5

d.    On the side of each box of DAVIDOFF COOL WATER, Lancaster's address appears together with the legend "Réf. 080 143 MADE IN FRANCE under license of Zino Davidoff S.A., Fribourg Switzerland." This text "Réf. 080 143 MADE IN FRANCE" appears in a smaller font on CVS's products than on authentic DAVIDOFF COOL WATER products.

e.    All boxes of the men's COOL WATER fragrances purchased from CVS are showing some degree of physical damage or stress that indicates that they are of lower quality than Plaintiffs' more resistant packaging. In particular, the glue holding the box seams together is failing in most of the CVS samples. Several of the boxes appear to have been reglued. As a result of the regluing, the corrugated liner inside many of the boxes is glued to the interior of the box. In authentic DAVIDOFF COOL WATER boxes, this liner is removable. In addition, smudges of glue appear on the exterior of several of the boxes of the counterfeit COOL WATER fragrances.

12.    These recent sales by CVS were not the first time that we have caught CVS selling counterfeit COOL WATER fragrances.

13.    The first instance occurred on July 29, 1998, when I purchased two bottles of COOL WATER fragrances in a CVS Pharmacy in the Bergen Mall, Paramus, New Jersey, one of which bore Production Number 070728438. A copy of the receipt for this purchase is annexed as Exhibit C. Upon examination I knew this sample from CVS was counterfeit because we had previously encountered other counterfeits with the same production number. In addition, the color of the folding box on the sample was slightly darker than the genuine box, the color of the sample bottle was more green than the turquoise color of the genuine product, and the print of the label on the bottom label of the sample was much harder to read than on the genuine product

6

and used a computerized 0 with a slash through it, which Lancaster does not use in our production.

14.     After this discovery, Zino Davidoff, through its attorney Lisa Pearson, sent Defendant a cease and desist letter dated September 9, 1998. At that time, CVS disclosed the name of its suppliers of DAVIDOFF fragrances and we believed that CVS had stopped selling counterfeit COOL WATER fragrances.

15.     We later discovered, in August 2005, that CVS was again selling counterfeit COOL WATER Fragrances, this time in Fort Lauderdale, Florida, through a purchase made by Grants investigator Ian Shirley. I personally examined this sample and concluded it was counterfeit for the same reasons set forth above in Paragraph 11.

16.     Once again, Zino Davidoff, through its attorney Lisa Pearson, sent a cease and desist letter regarding this unlawful activity to CVS dated October 19, 2005. After many months of correspondence and discussions CVS assured Zino Davidoff that it had no counterfeit COOL WATER fragrances in its inventory and would take measures to insure that it would only purchase genuine DAVIDOFF COOL WATER products in the future. Yet just six weeks later we again found Counterfeit COOL WATER Fragrances in multiple CVS stores, as described in Paragraph 11 above.

17.     CVS's counterfeits closely replicate Plaintiff's distinctive trade dress, notwithstanding the subtle differences I can detect, would be indistinguishable from genuine DAVIDOFF COOL WATER fragrances to an ordinary consumer.

US2000 9646903.3

## HARM

18.     Zino Davidoff and Lancaster face severe and irreparable harm if CVS is not enjoined from selling its counterfeit fragrances. Zino Davidoff and Lancaster have built the reputation and goodwill associated with the DAVIDOFF brand for decades through extensive advertising and rigorous control of both product quality and the distribution channels through which DAVIDOFF luxury products are sold. CVS's counterfeits seek to trade on this reputation and goodwill, and invariably tarnish Zino Davidoff's reputation and valuable trademarks. We have no quality control whatsoever over counterfeit COOL WATER products, which is particularly disturbing given the potential health and safety risks involved.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Date:  December 20, 2006

Guido Baumgartner

# EXHIBIT A

GENUINE DAVIDOFF COOL WATER MEN'S EAU DE TOILETTE



# EXHIBIT B

Westlaw.

Not Reported in F.Supp.2d                                                    Page 1
2000 WL 1901542 (S.D.Fla.), 56 U.S.P.Q.2d 1753
(Cite as: 2000 WL 1901542 (S.D.Fla.))

H

**Motions, Pleadings and Filings**

United States District Court, S.D. Florida.
**DAVIDOFF & CIE SA**, a Swiss corporation, and
Lancaster Group U.S. LLC, a
Delaware Limited Liability Corporation, Plaintiffs,
v.
PLD INTERNATIONAL CORPORATION, a
Florida corporation, and Phillipe L. Dray, an
individual, Defendants.
**No. 00-2635-CIV-MIDDLEBR.**

Sept. 25, 2000.

FINDINGS OF FACT AND CONCLUSIONS OF
LAW WHICH CONSTITUTE THE GROUNDS OF
THE
PRELIMINARY INJUNCTION ORDER

MIDDLEBROOKS, District J.

*1 THIS CAUSE is before the Court on Plaintiffs'
Motion for a Preliminary Injunction (DE 2) filed July
24, 2000. As the record reflects, Defendants were
served August 2, 2000. On August 4, 2000, the Court
noticed a show cause hearing for August 10, 2000.
Prior to the hearing, the Court ordered the parties to
submit Proposed Findings of Fact and Conclusions of
Law. At the conclusion of the evidentiary hearing
held August 10, 2000, the Court determined that
injunctive relief was warranted and entered a
Preliminary Injunction Order (DE 17).

The Court ordered that Defendants cease selling,
repackaging or altering any product with the name
"*Davidoff* " and/or "*Cool Water* " appearing thereon
from which the batch code has been removed or
obliterated, conditioned upon Plaintiffs posting a
$60,000.00 bond with the Clerk of Court. (Order at
2.)  [FN1] The Court offered to expedite the
discovery schedule and trial date; the parties were
asked to submit an agreed schedule. (Tr. 65-66.)

> FN1. The parties agreed to the wording of
> the order. (Tr. 64.)

At the hearing, the Court reviewed the Plaintiffs'
proposed Findings of Fact and Conclusions of Law

(DE 18) filed August 8, 2000 with the parties. (Tr. 9-
32.) Defendants contended that most of the findings
and conclusions were irrelevant or unsupported. (Tr.
9.) The Court requested the parties to resubmit
proposed findings of fact and conclusions of law
based upon the evidentiary hearing, and specifically
requested that counsel for Plaintiffs confine his
submission to the issue of obliteration of the batch
number on the bottle and the manufacturer's number
on the box. (Tr. 63-65.)

Plaintiffs' resubmitted Proposed Findings of Fact and
Conclusions of Law (DE 32) were filed September 8,
2000. [FN2] Defendants' Response and Opposition to
Plaintiffs' Submission of Proposed Findings of Fact
and Conclusions of Law (DE 34) was filed
September 13, 2000. Prior thereto, on August 16,
2000, Defendants filed a Notice of Appeal (DE 23).
Based upon the record, the Court assumes that no
assignment of error was made on account of the fact
that the findings of fact and conclusions of law,
which were addressed orally and recorded in open
court pursuant to Federal Rule of Civil Procedure
52(a), were not filed before or contemporaneously
with the preliminary injunction.

> FN2. It appears from the record that the
> transcript of the evidentiary hearing was not
> available until on or about September 5,
> 2000. See DE 28.

Upon consideration of the full record, the Court
makes the following Findings of Fact and
Conclusions of Law which constitute the grounds for
the Preliminary Injunction Order.

I. INTRODUCTION
The Plaintiffs, who market a product for mens
aftershave and ladies cologne as "*Davidoff Cool
Water* " and also "*Cool Water* " bring this action
against Defendants PLD and its principle Phillipe L.
Dray for the marketing of gray goods, namely,
*Davidoff Cool Water*, and for altering the product by
removing the bottles or containers, which can be in
varying shapes, from their carton. Thereafter, the
batch code number placed on by the manufacturer is
removed by grinding. In addition, any batch code or
bar code number of the carton itself is also obliterated
and covered with a non-descriptive bar coding. The
Plaintiffs seek to stop such activity by way of a
preliminary injunction, a permanent injunction after

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                Page 2
2000 WL 1901542 (S.D.Fla.), 56 U.S.P.Q.2d 1753
**(Cite as: 2000 WL 1901542 (S.D.Fla.))**

trial, and damages, costs, and attorneys fees as they may be authorized and awarded by the Court. A jury trial has been demanded by the Plaintiffs on all issues triable to a jury.

## II. FINDINGS OF FACT

\*2 Lancaster Group U.S. LLC, a Delaware Limited Liability Corporation, is a named Plaintiff. Coty Inc., a well known name in cosmetics, is the ultimate parent of Lancaster Group GmbH, formerly named Lancaster Group AG. Lancaster Group GmbH is the licensee of Plaintiff Davidoff and Cie, SA, a Swiss corporation, and is the sublicensor of Davidoff products to the Lancaster Group U.S. LLC. The license agreement between Lancaster and Davidoff is an exclusive license within the United States. Lancaster Group U.S. LLC is qualified to do business in the State of Florida. Lancaster Group U.S. LLC does do business in the State of Florida. Lancaster is authorized to bring an action of trademark infringement for the Davidoff & CIE, SA marks. (Complaint ¶ 4; Ford Affidavit ¶ ¶ 2-4.)

Defendant PLD International Corporation is a Florida corporation doing business in the State of Florida and in various other places throughout the United States and the world. Defendant Phillipe L. Dray is a Florida resident; he is the major and controlling shareholder of Defendant PLD International Corporation. (Complaint ¶ 3.)

The trademarks at issue, *Davidoff, Cool Water,* and *Davidoff Cool Water,* are registered in the United States. (Tr. 10; Meisser Affidavit ¶ ¶ 3-5.)

It is very important for Davidoff and Lancaster to maintain the integrity of the manufacturer's code from a standpoint of the health and safety of the customers, as well as tracing the goods into the gray market where they are marketed by institutions who are not authorized to sell the *Davidoff Cool Water* goods. (Baumgartner Declaration ¶ ¶ 's 2-4; Tr. 11.)

Diana Waldron, Vice President of Marketing for Lancaster Group, U .S., testified at the hearing. She is personally responsible for the marketing of *Davidoff Cool Water* and related products in the United States. (Tr. 33-34.) Ms. Waldron testified that the batch code is the code on the bottle that tells Davidoff when and where the product was manufactured. (Tr. 34; 42-43.) In the event there is a problem with the product, Davidoff can immediately trace how much of that product could be in the marketplace and the number of people who could be affected. (Tr. 35.) The batch code also relates to the shelf life of the product--the

shelf life of a fragrance is about two years. (*Id.*) If a customer has a product without the batch code, Davidoff can't advise that customer as to whether the product had exceeded its life, which is harmful to Davidoff. (*Id.*) The fragrance products are made in one facility and the body lotions are made at another. (Tr. 36.) The bar codes identify which location manufactured, compounded and packaged the product. (Tr. 37.) In addition to needing the batch code in case of the need to recall a product for health reasons or to determine the shelf life, when the batch code is missing from the product, it could appear to the consumer that the product had in some way been harmed or tampered with. (*Id.*)

\*3 Plaintiffs' complaint in terms of packaging of the products is the etching on the bottle and the removal of the bar code from the bottle and the removal of the batch code from the blue carton. (Tr. 25-26.)

Inventory control of the subject *Davidoff Cool Water* products is strict and tight. They are shipped from the Lancaster manufacturing facilities located in Monaco and Chartres, France. Once they come to the United States, they are shipped to ODC in Chambersburg, Pennsylvania where Lancaster maintains a warehouse, and where the *Davidoff Cool Water* products are all supposed to go. From that location, they are shipped directly to Lancaster approved customers. Testers may be shipped without the *Davidoff* blue carton. Otherwise the products are shipped in the distinctive blue carton and not wrapped in a clear plastic. The products which have been wrapped in a clear plastic normally have been removed from the original carton, the product code deleted and then repackaged utilizing the clear outer wrap. Deletion of the product code is not authorized by Lancaster and is detrimental to its operation. (Waldron Affidavit ¶ 12; Tr. 37-38).

Walter Philbrick, a licensed private investigator, ordered and purchased twelve units of the *Cool Water* (W) EDT 1. Oz Spray from PLD and received those units from PLD on May 5, 2000 as described in his report. Each of the *Davidoff Cool Water* products he received on May 5, 2000 had been mutilated in a uniform manner. Each bottle purchased was in a blue Davidoff box, which contained a 1 Oz. bottle of *Davidoff Cool Water.* All of the boxes had a section of the bottom of the box removed and a sticker with a different bar code had been placed over the removed portion of the box. All of the bottles contained in those boxes had been etched near the bottom of the bottle such that any printing of batch codes on the bottle would have been removed. None of the bottles

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 3
2000 WL 1901542 (S.D.Fla.), 56 U.S.P.Q.2d 1753
**(Cite as: 2000 WL 1901542 (S.D.Fla.))**

or boxes which contained those bottles had any batch identification information that he could see. A photo of a sample of the boxes and bottles which he received on May 5, 2000 is in Plaintiffs' Exhibit Book, as Exhibit "2". Also in Plaintiffs' Exhibit Book as Exhibit "4" is the sales receipt which Mr. Philbrick received when he purchased the twelve bottles of *Davidoff Cool Water* on May 5, 2000. On July 14, 2000, Mr. Philbrick purchased twelve units of *Davidoff Cool Water* Woman Brand 1.7 Fl. Oz. Eau De Toilette from PLD. This confirms the ongoing pattern of product batch code removal first observed May 5, 2000. The products are Exhibit "13" and the receipt is Exhibit "14" in Plaintiffs' Exhibit Book. (Philbrick Affidavit ¶ ¶ 's 4-6; Tr. 17.)

### III. CONCLUSIONS OF LAW

This Court has subject matter jurisdiction over this action. The Court has in personam jurisdiction over the Defendants.

The Eleventh Circuit has identified four factors that must be considered when entertaining a motion for preliminary injunctive relief: (1) a substantial likelihood of prevailing on the merits of its claim at trial; (2) a substantial threat of irreparable injury if injunctive relief is denied; (3) the injury to the plaintiff outweighs the harm the injunction may cause to the defendants; and (4) the injunction would not be adverse to the public interest. *McDonald's Corp. v. Robertson*, 147 F.3d 1201, 1306 (11th Cir.1998); *see also, Levi Strauss & Co. v. Sunrise International Trading, Inc.,* 51 F.3d 982 (11th Cir.1995). The Court is not required to find that "the evidence positively guarantees a final verdict in plaintiff's favor," and may rely on evidence that would be inadmissible at a trial, if appropriate given the "character and objectives of the [preliminary] injunctive proceeding." *Id.* "[N]o particular quantum of proof is required as to each of the four criteria." *Louis v. Meissner*, 530 F.Supp. 924, 925 (S.D.Fla.1981).

*4 On August 10, 2000, prior to entering the Preliminary Injunction Order, the Court held an evidentiary hearing and found that Plaintiff has established each element required for a preliminary injunction as to the sale of products with the name "*Davidoff* " and/or "*Cool Water* " from which the batch code has been removed or obliterated, and is therefore entitled to a preliminary injunction preventing such activities.

A. Plaintiffs Have a Substantial Likelihood of Prevailing at Trial on the Merits of its Claim in Count

II of its Verified Complaint that Selling "*Davidoff* " and/or "*Cool Water* " Products From Which the Batch Code Has Been Removed Constitutes Trademark Infringement

A claim for trademark infringement arises under the Lanham Trademark Act, 15 U.S.C. 1051 *et seq* where "[a]ny person ... without the consent of the registrant ... use[s] in commerce any ... registered mark in connection with the sale ... of any goods ... [and] such use is likely to cause confusion ... or to deceive ...." 15 U.S.C. § 1114(1)(a).

Trademark infringement is established by showing that a plaintiff owns a valid mark, that the mark was used without its consent, and that such unauthorized use is likely to cause confusion, mistake or deception. *See* 15 U.S.C. § § 1114, 1125; *Home Box Office, Inc. v. Showtime/The Movie Channel, Inc.,* 832 F.2d 1311, 1314 (11th Cir.1987); *Burger King Corp. v. Mason,* 710 F.2d 1480, 1491 (11th Cir.1983), *cert. denied,* 465 U.S. 1102 (1984).

It is undisputed that Plaintiffs have properly registered their trademarks. Trademark registration is conclusive evidence of the exclusive right to use the mark. 15 U.S.C. § 1065. A trademark violation is established by proving the unauthorized use of a trademark in the sale of goods which is likely to cause confusion or deceive purchasers as to the source of the origin of a product. The primary issue which must be proven is whether the public is likely to be deceived or confused. *See Dieter v. B & H Indusustries of Southwest Florida,* 880 F.2d 322, 326 (11th Cir.1989).

Defendants' unauthorized sale of "*Davidoff* " and/or "*Cool Water* " products from which the batch codes or manufactuer's codes have been obliterated creates a likelihood of confusion and violates 15 U.S.C. § 1114 and § 1125 of the Trademark Act.

The Defendants, or their suppliers, obliterate or remove the batch codes on the bottles and boxes, and then resell the Plaintiffs' products. The batch codes are vital to Plaintiffs' quality control effort in that those codes are the only means for the Plaintiffs to identify and recall defective or outdated products. Moreover, the codes on the bottles have been obliterated by etching the glass which degrades the appearance of the product and creates further confusion.

While Defendants question the Plaintiffs' assertion that the batch codes are utilized, in part, for product

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 1901542 (S.D.Fla.), 56 U.S.P.Q.2d 1753
(Cite as: 2000 WL 1901542 (S.D.Fla.))

Page 4

recalls, by pointing to the hearing testimony of Ms. Walden that Davidoff had, to her knowledge, never recalled any of its products (Tr. 40), it is the right to control the quality--as well as the actual quality--that is afforded one of the most important protections under the Landham Act. *See John Paul Mitchell Systems v. Pete-N-Larry's Inc.*, 862 F.Supp. 1020, 1026 (W.D.N.Y.1994) quoting *Polymer Technology Corp. v. Mimran*, 975 F.2d 58, 62 (2d Cir.1992).

*5 Thus, while Defendants correctly argue that resale by the first purchaser of the genuine article under the producer's trademark is not trademark infringement; *Matrix Essentials v. Emporium Drug Mart*, 988 F.2d 587 (5th Cir.1993), a product is not "genuine" unless it is manufactured and distributed under quality controls established by the manufacturer. *Shell Oil Co. v. Commercial Petroleum, Inc.*, 928 F.2d 104 (4th Cir.1991); *El Greco Leather Products Co. v. Shoe World*, 806 F.2d 392 (2d Cir.1986), *cert. denied,* 484 U.S. 817 (1987). By selling products from which the batch codes have been removed, Defendants are depriving Plaintiffs of their exclusive right to control the quality of their products.

B. There is a Substantial Threat of Irreparable Injury to Plaintiffs if Injunctive Relief is Denied

Irreparable injury is presumed for trademark infringement. *E. Remy Martin & Co., S.A. v. Internationational Imports, Inc.*, 756 F .2d 1525, 1530 (11th Cir.1985). The Court finds that due to the loss of quality control over the products at issue bearing its trademark. Plaintiffs have satisfied the second element of the preliminary injunction analysis. *See Shell Oil*, 928 F.2d at 107.

C. The Injury to the Plaintiffs Outweighs the Harm the Injunction May Cause to the Defendants

Plaintiffs will suffer a significant hardship if the requested preliminary injunction is not granted for the reasons previously stated. Defendants, on the other hand, remain fully able to sell the numerous other products they offer, see Exhibit 12, Plaintiffs' Exhibit Book, as well as any Davidoff products with batch codes that have not been removed. The Court finds that Plaintiffs have established a substantial risk of irreparable harm to its trademark which outweighs the threat of injury to Defendants. Plaintiffs have therefore satisfied the the third element of the preliminary injunction analysis.

D. The Preliminary Injunction Is Not Adverse to the

Public Interest

Public policy strongly favors allowing the courts to "fashion remedies which will take all the economic incentive out of trademark infringement." *Playboy Enterprises v. Baccarat Clothing Co.*, 692 F.2d 1272, 1275 (9th Cir.1982). The public is entitled to be free from deception and confusion. "In a trademark infringement or unfair competition case, a third party, the consuming public, is present and its interests are paramount." *BellSouth Advertising & Publishing Corp. v. Real Color Pages, Inc.*, 792 F.Supp. 775, 780 (M.D.Fla.1991).

The selling of Davidoff products from which the batch codes enabling Plaintiffs to identify and recall defective or outdated products have been obliterated cannot be in the public interest. Injunctive relief will serve the public interest by preventing such products from reaching consumers. Therefore, Plaintiffs have satisfied the final element for injunctive relief.

IV. CONCLUSION

The reasons stated above constitute the grounds of the Preliminary Injunction Order (DE 17) entered August 10, 2000 wherein the Court ordered that the Defendants shall cease selling, repackaging or altering any product with the name "*Davidoff*" and/or "*Cool Water* " appearing thereon from which the batch code has been removed or obliterated, conditioned upon Plaintiffs posting a $60,000.00 bond with the Clerk of Court.

PRELIMINARY INJUNCTION ORDER

*6 THIS CAUSE came before the Court upon the Verified Complaint filed in this action, the Motion for a Preliminary Injunction, the memorandum of fact and law, with supporting declarations, affidavits, and the exhibits presented to the Court, and upon the proceedings held in this Court with due notice given to the Defendants, said proceedings having been held this date, August 10, 2000, the Plaintiffs having shown a likelihood of success at trial, irreparable injury, a balancing of the equities favoring the Plaintiffs, and a public interest that needs to be served to avoid further infringement, confusion, and because of the lack of an adequate remedy at law, it is hereby

ORDERED and ADJUDGED that:

1. The Defendants PLD International Corporation and Phillipe L. Dray ("Defendants"), their respective officers, directors, agents, employees, and attorneys, and any other persons in active concert or

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 5
2000 WL 1901542 (S.D.Fla.), 56 U.S.P.Q.2d 1753
**(Cite as: 2000 WL 1901542 (S.D.Fla.))**

participation with them including but not limited to any and all other Defendants' entities involved in the subject activities, who receive actual notice of this Order by personal service or otherwise shall cease selling, repackaging or altering any product with the name "*Davidoff* " and/or "*Cool Water* " appearing thereon from which the batch code has been removed or obliterated.

2. The Plaintiffs shall post with the Clerk of this Court a bond in the amount of $60,000.00 as security against the Defendants in the event of any impropriety in the issuance of this Order, or other damages found by this Court to have been occasioned by the Defendants based upon preliminary injunction.

2000 WL 1901542 (S.D.Fla.), 56 U.S.P.Q.2d 1753

**Motions, Pleadings and Filings (Back to top)**

• 2002 WL 32753684 (Trial Motion, Memorandum and Affidavit) Emergency Motion to Compel Discovery and Supporting Memorandum of Law (Sep. 04, 2002)

• 2002 WL 32753679 (Trial Motion, Memorandum and Affidavit) Memorandum of Fact and Law in Support of Plaintiff's Motion to Compel (Aug. 30, 2002)

• 2002 WL 32753694 (Trial Motion, Memorandum and Affidavit) Motion to Enforce Settlement Agreement and Incorporated Memorandum of Law (Aug. 14, 2002)

• 2001 WL 34716906 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Memorandum of Fact and Law in Support of Motion for Partial Summary Judgment on the Issue of Liability and Motion for Entry of Permanent Injunction (Nov. 13, 2001)

• 2001 WL 34716915 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Combined Motion and Memorandum of Fact and Law for Release of Bond (Nov. 13, 2001)

• 2001 WL 34716926 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Combined Motion and Memorandum of Fact and Law for Defendants' Release of Infringing Inventory (Nov. 13, 2001)

• 2001 WL 34716893 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Reply to Defendant's Memorandum of law Dated April 30, 2001 in Opposition to Plaintiff's Motion to Alter, Amend or Correct Order (Jun. 04, 2001)

• 2001 WL 34716872 (Trial Motion, Memorandum and Affidavit) Plaintiff's Reply to Defendants' Response to Plaintiff's Motion for Contempt (Apr. 10, 2001)

• 2001 WL 34716863 (Trial Motion, Memorandum and Affidavit) Response to Motion for Contempt (Apr. 02, 2001)

• 2001 WL 34716852 (Trial Motion, Memorandum and Affidavit) Memorandum of Fact and Law in Support of Plaintiffs' Motion to Alter, Amend or Correct Order Granting in Part and Denying in Part Defendants' Motion to Dismiss or, in the Alternative, for Partial Summary Judgment (Mar. 28, 2001)

• 2001 WL 34716842 (Trial Pleading) Answer and Affirmative Defenses (Mar. 15, 2001)

• 2001 WL 34716834 (Trial Motion, Memorandum and Affidavit) Plaintiff's Memorandum of Fact and law in Support of Plaintiff's First Motion to Cite Defendant in Civil and Criminal Contempt of This Court's Order of August 10 2000 (Feb. 28, 2001)

• 2000 WL 34468943 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Pld International Corporation and Phillipe L. Dray in Further Support of Motion to Dismiss or. in the Alternative. for Partial Summary Judgment (Sep. 19, 2000)

• 2000 WL 34468938 (Trial Motion, Memorandum and Affidavit) Plaintiffs' Response Memorandum of Fact and Law in Opposition to Defendants' Motion to Dismiss or, in the Alternative, for Partial Summary Judgment (Sep. 08, 2000)

• 2000 WL 34468935 (Trial Motion, Memorandum and Affidavit) Plaintiff's Response to Defendant's Opposition to Plaintiff's Motion for a Preliminary Injunction (Aug. 16, 2000)

• 2000 WL 34468932 (Trial Motion, Memorandum and Affidavit) Memorandum of Pld International Corporation and Phillipe L. Dray in Support of Motion to Dismiss or. in the Alternative. for Partial Summary Judgment (Aug. 11, 2000)

• 2000 WL 34468928 (Trial Motion, Memorandum and Affidavit) Memorandum of Pld International Corporation and Phillipe L. Dray in Opposition to Motion for Preliminary Injunction (Aug. 08, 2000)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2000 WL 1901542 (S.D.Fla.), 56 U.S.P.Q.2d 1753
(Cite as: 2000 WL 1901542 (S.D.Fla.))

•     1:00CV02635     (Docket)
(Jul. 24, 2000)

• 2000 WL 34468957 (Trial Motion, Memorandum
and Affidavit) Defendants' Memorandum of Law in
Opposition to Plaintiffs' Motion to Schedule Hearing
on Fully Briefed Motion by Plaintiff to Cite
Defendants in Contempt (May. 01, 2000)

• 2000 WL 34468955 (Trial Motion, Memorandum
and Affidavit) Defendants' Memorandum of law in
Opposition to Plaintiffs' Motion to Alter, Amend or
Correct Order (Apr. 30, 2000)

• 2000 WL 34468962 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Reply Memorandum in
Support of Motion for Partial Summary Judgment
and Permanent Injunction (Feb. 28, 2000)

• 2000 WL 34468921 (Trial Pleading) Verified
Complaint for Unfair Competition (2000)

• 2000 WL 34468925 (Trial Motion, Memorandum
and Affidavit) Plaintiffs' Memorandum of Fact and
Law in Support of Plaintiffs' Motion for a
Preliminary Injunction (2000)

• 2000 WL 34468941 (Trial Motion, Memorandum
and Affidavit) Defendants' Response and Opposition
to Plaintiffs' Submission of Proposed Findings of
Facts and Conclusions of law (2000)

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

263 F.3d 1297                                                                                                    Page 1
263 F.3d 1297, 60 U.S.P.Q.2d 1046, 14 Fla. L. Weekly Fed. C 1225
**(Cite as: 263 F.3d 1297)**

ρ·

**Briefs and Other Related Documents**

United States Court of Appeals,
Eleventh Circuit.
**DAVIDOFF & CIE, S.A.,** a Swiss Corporation, and
Lancaster Group US LLC, a
Delaware Limited Liability Corporation, Plaintiffs-
Appellees,
v.
**PLD** INTERNATIONAL CORPORATION, a
Florida Corporation, and Phillipe L. Dray, an
individual Florida resident, Defendants-Appellants.
**No. 00-14368.**

Aug. 28, 2001.

Owner of trademark for brand of fragrance water
sued unauthorized distributor for infringement. The
United States District Court for the Southern District
of Florida, No. 00-02635-CV-DMM, Donald M.
Middlebrooks, J., granted preliminary injunctive
relief, and distributer appealed. The Court of
Appeals, Anderson, Chief Judge, held that etching of
glass bottles to remove trademark owner's batch
codes was material alteration of product which
created likelihood of consumer confusion.

Affirmed.

West Headnotes

**[1] Trademarks** 🔑1704(2)
382Tk1704(2) Most Cited Cases
        (Formerly 382k620)
Party seeking preliminary injunction for trademark
infringement must establish: (1) substantial
likelihood of success on merits; (2) that it would be
irreparably harmed if injunctive relief were denied;
(3) that threatened injury to trademark owner
outweighs whatever damage injunction may cause to
alleged infringer; (4) that injunction, if issued, would
not be adverse to public interest.

**[2] Trademarks** 🔑1421
382Tk1421 Most Cited Cases
        (Formerly 382k332)
To succeed on merits of trademark infringement
claim, plaintiff must show that defendant used mark

in commerce without its consent and that
unauthorized use was likely to deceive, cause
confusion, or result in mistake. Lanham Trade-Mark
Act, § § 32, 43(a), 15 U.S.C.A. § § 1114, 1125(a).

**[3] Trademarks** 🔑1429(2)
382Tk1429(2) Most Cited Cases
        (Formerly 382k368.1)
Although trademark owner's infringement protections
are generally exhausted by authorized initial sale of
its product, unauthorized resale of materially
different product containing mark can constitute
infringement. Lanham Trade-Mark Act, § § 32,
43(a), 15 U.S.C.A. § § 1114, 1125(a).

**[4] Trademarks** 🔑1430(1)
382Tk1430(1) Most Cited Cases
        (Formerly 382k368.1)
Unauthorized distribution of fragrance water with
trademark owner's batch codes removed constituted
infringement, even though distributor was reselling
genuine articles; etching of glass bottles to remove
batch codes was material alteration of product which
created likelihood of consumer confusion. Lanham
Trade-Mark Act, § § 32, 43(a), 15 U.S.C.A. § §
1114, 1125(a).
*1298 Edward M. Joffe, Sandler, Travis &
Rosenberg, Miami, FL, for Defendants-Appellants.

Charles E. Buffon, Covington & Burling,
Washington, DC, and Jack L. Dominik, Miami Lakes,
FL, for Plaintiffs-Appellees.

Appeal from the United States District Court for the
Southern District of Florida.

Before ANDERSON, Chief Judge, and FAY and
BRIGHT [FN*], Circuit Judges.

> FN* Honorable Myron H. Bright, U.S.
> Circuit Judge for the Eighth Circuit, sitting
> by designation.

ANDERSON, Chief Judge:

This case appears to be the first time that this circuit
has addressed the circumstances under which the
resale of a genuine product with a registered
trademark can be considered infringement. We
recognize the general rule that a trademark owner's
authorized initial sale of its product exhausts the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

263 F.3d 1297                                                                    Page 2
263 F.3d 1297, 60 U.S.P.Q.2d 1046, 14 Fla. L. Weekly Fed. C 1225
(Cite as: 263 F.3d 1297)

trademark owner's right to maintain control over who thereafter *1299 resells the product; subsequent sales of the product by others do not constitute infringement even though such sales are not authorized by the trademark owner. However, we adopt from our sister circuits their exception to this general rule--i.e., the unauthorized resale of a materially different product constitutes infringement. Because we conclude that the resold products in the instant case are materially different, we affirm.

## I. BACKGROUND

Davidoff & Cie, S.A., a Swiss corporation, is the manufacturer of DAVIDOFF COOL WATER fragrance products and owns the U.S. trademark. Davidoff & Cie, S.A. exclusively licenses Lancaster Group US LLC (collectively "Davidoff") to distribute its products to retailers in the United States. Working outside of this arrangement, PLD International Corporation ("PLD") acquires DAVIDOFF fragrances that are intended for overseas sale or that are sold in duty-free sales. PLD then distributes them to discount retail stores in the United States.

At the time that PLD acquires the product, the original codes on the bottom of the boxes are covered by white stickers, and batch codes on the bottles themselves have been obliterated with an etching tool. The etching leaves a mark on the bottle near its base on the side opposite the DAVIDOFF COOL WATER printing. The mark is approximately one and one-eighth inches in length and one-eighth of an inch wide. The batch codes are removed, according to PLD, to prevent Davidoff from discovering who sold the fragrances to PLD because Davidoff would stop selling to those vendors.

## II. DISTRICT COURT PROCEEDINGS

Davidoff filed a complaint seeking, *inter alia,* a preliminary injunction against PLD [FN1] for infringement of its trademark under the Lanham Trade-Mark Act, 15 U.S.C. § 1051 *et seq.* [FN2] Davidoff alleged that PLD's distribution of the fragrances with the batch codes removed and obliterated constituted infringement. The district court held that PLD's distribution of DAVIDOFF fragrances constituted infringement by creating a likelihood of consumer confusion. In reaching this conclusion, the district court found that the *1300 product distributed by PLD differed from the genuine DAVIDOFF product because the removal of the batch code from the bottle by etching the glass "constitutes alteration of a product," [FN3] which would create a likelihood of consumer confusion. A consumer might believe that a product had been

harmed and tampered with. [FN4] Based on the infringement finding, the district court granted a preliminary injunction, prohibiting PLD from selling, repackaging or altering any product with the name "DAVIDOFF" and/or "COOL WATER" with an obliterated batch code. This appeal followed.

FN1. PLD and its principle, Phillipe L. Dray, were sued. We refer to them collectively as "PLD."

FN2. Section 32 of the Lanham Act provides:
(1) Any person who shall, without consent of the registrant-- (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; ...
shall be liable in a civil action by the registrant....
15 U.S.C. § 1114(1). Similarly, section 43(a)(1) of the Lanham Act provides:
Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce, any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which--
(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of such person with another person, or as to the origin, sponsorship or approval of his or her goods, services, or commercial activities by another person, ...
shall be liable in a civil action....
15 U.S.C. § 1125(a)(1).

FN3. Record 3:63 (August 10, 2000, evidentiary hearing on the preliminary injunction).

FN4. The district court also based its finding of infringement on the fact that the removal of the batch code interfered with DAVIDOFF's quality control system. Although the lack of quality control can rise to the level of a material difference from the trademark owner's product and create a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

likelihood of confusion, *see Warner-Lambert Co. v. Northside Dev. Corp., 86 F.3d 3, 7 (2d Cir.1996)*, we need not address the district court's findings in this regard because we conclude that the physical differences in PLD's product create a likelihood of consumer confusion and support the district court's infringement finding. *See infra* Part VI.

### III. CONTENTIONS

PLD argues that it is selling genuine DAVIDOFF fragrances and that as a result no consumer can be confused. Therefore, it claims that it cannot be considered an infringer under the Lanham Act. PLD asserts that "[w]ith or without a manufacturer or batch code on its packaging, the product is absolutely the same." PLD states that the district court incorrectly relied on cases where the product itself and not just the packaging was altered.

Davidoff urges us to adopt a material difference test whereby a material difference between goods sold under the same trademark warrants a finding of consumer confusion. Davidoff argues that the obliteration of batch codes by PLD transforms the appearance of its product into a materially different, infringing product, which is likely to confuse consumers.

### IV. PRELIMINARY INJUNCTION POSTURE

[1] We review a district court's order granting or denying a preliminary injunction for abuse of discretion. *McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir.1998)*. A party seeking a preliminary injunction for trademark infringement must establish four elements: (1) substantial likelihood of success on the merits; (2) that it would be irreparably harmed if injunctive relief were denied; (3) that the threatened injury to the trademark owner outweighs whatever damage the injunction may cause to the alleged infringer; (4) that the injunction, if issued, would not be adverse to the public interest. *See id.* It is well established in this circuit that "[a] preliminary injunction is an extraordinary and drastic remedy not to be granted unless the movant clearly established the 'burden of persuasion' " as to all four elements. *Siegel v. LePore, 234 F.3d 1163, 1176 (11th Cir.2000)* (en banc) (internal citation omitted). The issues raised by PLD in this case primarily address the first element: substantial likelihood of success on the merits.

### V. TRADEMARK INFRINGEMENT: LAW

[2] In order to succeed on the merits of a trademark infringement claim, a plaintiff **\*1301** must show that the defendant used the mark in commerce without its consent and "that the unauthorized use was likely to deceive, cause confusion, or result in mistake." *McDonald's Corp., 147 F.3d at 1307*. Generally speaking, the determination boils down to the existence *vel non* of "likelihood of confusion." *AmBrit, Inc. v. Kraft, Inc., 812 F.2d 1531, 1538 (11th Cir.1986)*.

#### A. *Purpose*

To understand what type of consumer confusion is actionable under the Lanham Trade-Mark Act, it is useful to review Congress' purposes for enacting trademark legislation. Congress sought to protect two groups: consumers and registered trademark owners. *See* S.Rep. No. 1333, 19th Cong.2d Sess., *reprinted in* 1946 U.S.Code Cong. Serv. 1274. In protecting these groups lawmakers recognized that "[e]very product is composed of a bundle of special characteristics." *Societe Des Produits Nestle, S.A. v. Casa Helvetia, Inc., 982 F.2d 633, 636 (1st Cir.1992)* ("Nestle"). Consumers who purchase a particular product expect to receive the same special characteristics every time. *See id.* The Lanham Act protects these expectations by excluding others from using a particular mark and making consumers confident that they can purchase brands without being confused or misled. *See* 15 U.S.C. § 1114(1); S.Rep. No. 100-515, at 4 (1988), *reprinted in* 1988 U.S.C.C.A.N. 5577, 5580. Thus trademark law ensures consistency for the benefit of consumers. *See Nestle, 982 F.2d at 636*; *Original Appalachian Artworks, Inc. v. Granada Electronics, Inc., 816 F.2d 68, 75 (2d Cir.1987)* (Cardamone, J., concurring).

The Lanham Act also protects trademark owners. *See* S.Rep. No. 100-515 at 4. A trademark owner has spent time, energy and money in presenting a product to the public and building a reputation for that product. *See Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co., 316 U.S. 203, 205, 62 S.Ct. 1022, 1024, 86 L.Ed. 1381 (1942)*; S.Rep. No. 1333, *reprinted in* 1946 U.S.Code Cong. Serv. 1274. The Act prevents another vendor from acquiring a product that has a different set of characteristics and passing it off as the trademark owner's product. *See Two Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 778, 112 S.Ct. 2753, 2762, 120 L.Ed.2d 615 (1992)* (Stevens, J., concurring) (noting that passing off is a form of infringement prohibited by the Lanham Act). This would potentially confuse consumers about the quality and nature of the trademarked product and erode consumer goodwill. *See Iberia Foods Corp. v.*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Romeo,* 150 F.3d 298, 303 (3d Cir.1998); *Nestle,* 982 F.2d at 638.

### B. *Resale of a Genuine Trademarked Product and the Material Difference Exception*

[3] The resale of genuine trademarked goods generally does not constitute infringement. *See, e.g., Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.,* 988 F.2d 587, 590 (5th Cir.1993); *NEC Electronics v. CAL Circuit Abco,* 810 F.2d 1506, 1509 (9th Cir.1987). This is for the simple reason that consumers are not confused as to the origin of the goods: the origin has not changed as a result of the resale. *See Enesco Corp. v. Price/Costco Inc.,* 146 F.3d 1083, 1085 (9th Cir.1998) (quoting *NEC,* 810 F.2d at 1509). Under what has sometimes been called the "first sale" or "exhaustion" doctrine, the trademark protections of the Lanham Act are exhausted after the trademark owner's first authorized sale of that product. *See Iberia Foods,* 150 F.3d at 301 n. 4; **\*1302**\*Enesco,* 146 F.3d at 1085; *Allison v. Vintage Sports Plaques,* 136 F.3d 1443, 1447-48 (11th Cir.1998). Therefore, even though a subsequent sale is without a trademark owner's consent, the resale of a genuine good does not violate the Act.

This doctrine does not hold true, however, when an alleged infringer sells trademarked goods that are materially different than those sold by the trademark owner. Our sister circuits have held that a materially different product is not genuine and therefore its unauthorized sale constitutes trademark infringement. *See Nestle,* 982 F.2d at 644 (1st Cir.); *Original Appalachian Artworks,* 816 F.2d at 73 (2d Cir.); *Iberia Foods,* 150 F.3d at 302-3 (3d Cir.); *Martin's Herend Imports, Inc. v. Diamond & Gem Trading USA, Co.,* 112 F.3d 1296, 1302 (5th Cir.1997); *cf. Enesco,* 146 F.3d at 1087 (9th Cir.) (quoting *Warner-Lambert Co. v. Northside Dev. Corp.,* 86 F.3d 3, 6 (2d Cir.1996)) (noting that a non-conforming product is not genuine and "its distribution constitutes trademark infringement"). We follow our sister circuits and hold that the resale of a trademarked product that is materially different can constitute a trademark infringement. [FN5] This rule is consistent with the purposes behind the Lanham Act, because materially different products that have the same trademark may confuse consumers and erode consumer goodwill toward the mark. *See Iberia Foods,* 150 F.3d at 303; *Nestle,* 982 F.2d at 638.

> FN5. PLD argues that the material difference test only applies to so-called

gray-market goods: foreign made goods bearing a trademark and intended for sale in a foreign country, but that are subsequently imported into the United States without the consent of the U.S. trademark owner. We reject this argument and join the Third Circuit in noting that infringement by materially different products "is not limited to gray goods cases.... The same theory has been used to enjoin the sale of domestic products in conditions materially different from those offered by the trademark owner." *Iberia Foods Corp. v. Romeo,* 150 F.3d 298, 302 (3d Cir.1998). Indeed, several courts have held that the purchase and resale of goods solely within the United States may constitute infringement when differences exist in quality control or the products themselves. *See Enesco Corp. v. Price/Costco Inc.,* 146 F.3d 1083 (9th Cir.1998); *Warner-Lambert Co. v. Northside Dev. Corp.,* 86 F.3d 3 (2d Cir.1996); *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc.,* 988 F.2d 587 (5th Cir.1993); *Shell Oil Co. v. Commercial Petroleum Inc.,* 928 F.2d 104 (4th Cir.1991).

Not just any difference will cause consumer confusion. A material difference is one that consumers consider relevant to a decision about whether to purchase a product. *See Martin's Herend Imports,* 112 F.3d at 1302; *Nestle,* 982 F.2d at 641. Because a myriad of considerations may influence consumer preferences, the threshold of materiality must be kept low to include even subtle differences between products. *See Iberia Foods,* 150 F.3d at 304; *Nestle,* 982 F.2d at 641.

The caselaw supports the proposition that the resale of a trademarked product that has been altered, resulting in physical differences in the product, can create a likelihood of consumer confusion. Such alteration satisfies the material difference exception and gives rise to a trademark infringement claim. *Nestle,* 982 F.2d at 643-44 (applying the material difference exception, e.g., differences in the composition, presentation and shape of premium chocolates); *Original Appalachian Artworks,* 816 F.2d at 73 (applying the material difference exception where the infringing Cabbage Patch Kids dolls had Spanish language adoption papers and birth certificates, rather than English).

### VI. APPLICATION OF THE EXCEPTION IN THIS CASE

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

263 F.3d 1297
263 F.3d 1297, 60 U.S.P.Q.2d 1046, 14 Fla. L. Weekly Fed. C 1225
(Cite as: 263 F.3d 1297)

[4] The district court found that etching the glass to remove the batch code *1303 degrades the appearance of the product and creates a likelihood of confusion. In addition, the court credited testimony of the marketing vice-president that the etching may make a consumer think that the product had been harmed or tampered with. We defer to the district court's finding that the etching degrades the appearance of the bottle. This finding is not clearly erroneous in light of the stylized nature of the fragrance bottle, which has an otherwise unblemished surface. Indeed, based on our own examination and comparison of the genuine fragrance bottle and the bottle sold by PLD, we agree with the district court that a consumer could very likely believe that the bottle had been tampered with. We agree with the district court that this alteration of the product could adversely affect Davidoff's goodwill, creates a likelihood of consumer confusion, satisfies the material difference exception to the first sale doctrine, and thus constitutes a trademark infringement. We believe that the material difference in this case is comparable to, or more pronounced than, the product differences in *Nestle* and *Original Appalachian Artworks* where the First and Second Circuits applied the material difference exception and found trademark infringement.

PLD directs us to two cases, *Graham Webb International Ltd. Partnership v. Emporium Drug Mart, Inc.*, 916 F.Supp. 909 (E.D.Ark.1995), and *John Paul Mitchell Systems v. Randalls Food Markets, Inc.*, 17 S.W.3d 721 (Tex.App.2000), where courts have held that the removal of batch codes on hair care products does not constitute infringement. They are both distinguishable from the instant case. Neither court found that the removal affected the overall appearance of the product to the extent that it might be material to a consumer decision to purchase the product. In *Graham Webb*, the court noted that the removal of batch codes resulted in "almost imperceptible scratches" that were not likely to confuse consumers. 916 F.Supp. at 916. And in *Randalls Food Markets*, the court stated that "there was no evidence that removal of the batch codes defaced the bottles." 17 S.W.3d at 736. In the instant case, the etching on the fragrance bottle is more than almost imperceptible scratches. Indeed, the district court credited testimony that consumers may regard the bottles as harmed or tampered with. We agree with the district court that the physical difference created by the obliteration of the batch code on PLD's product constitutes a material difference. *See John Paul Mitchell Systems v. Pete-N-Larry's Inc.*, 862 F.Supp. 1020, 1027 (W.D.N.Y.1994) (concluding

that removal of batch codes from bottles of hair care products, leaving noticeable scars on the bottles and erasing some of the information printed, constitutes a material difference).

PLD also attempts to cast the effect of the etching as minimal. PLD argues that the etching is on the back side of the bottle beneath several lines of printing that identifies the manufacturer and distributor, country of origin and volume, while the front side contains the trademarks in gold and black script letters. This may be true, but the etching is clearly noticeable to a consumer who examines the bottle. At oral argument, PLD argued that only the packaging but not the product itself--i.e., the liquid fragrance inside the bottle--had been altered by the etching. In marketing a fragrance, however, a vendor is not only selling the product inside the bottle, it is also selling the "commercial magnetism" of the trademark that is affixed to the bottle. *Mishawaka Rubber*, 316 U.S. at 205, 62 S.Ct. at 1024. The appearance of the *1304 product, which is associated with the trademark, is important to establishing this image. This makes the appearance of the bottle material to the consumer decision to purchase it. Because the etching degrades the appearance of the bottles, the DAVIDOFF fragrance that PLD distributes is materially different from that originally sold by Davidoff. Therefore, we agree with the district court that PLD's sale of this materially different product creates a likelihood of confusion, and satisfies Davidoff's burden of establishing a likelihood of success on the merits.

## VII. OTHER ELEMENTS OF A PRELIMINARY INJUNCTION

Next, we examine the remaining three elements required for a preliminary injunction. On the irreparable injury element, we note that our circuit has stated that " 'a sufficiently strong showing of likelihood of confusion [caused by trademark infringement] may by itself constitute a showing of ... [a] substantial threat of irreparable harm.' " *McDonald's Corp.*, 147 F.3d at 1310 (quoting *E. Remy Martin & Co. v. Shaw-Ross Int'l Imports*, 756 F.2d 1525, 1530 (11th Cir.1985)). PLD's only argument against a finding of irreparable injury is that Davidoff cannot show a likelihood of confusion. Because we found a likelihood of consumer confusion and thus reject PLD's only argument against a finding of irreparable harm, and because the likelihood of confusion is substantial, we will not overturn the district court's finding of irreparable injury.

Regarding the balancing of potential harms, we

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

263 F.3d 1297                                                                                                    Page 6
263 F.3d 1297, 60 U.S.P.Q.2d 1046, 14 Fla. L. Weekly Fed. C 1225
**(Cite as: 263 F.3d 1297)**

agree with the district court that the probable loss of
consumer goodwill for Davidoff outweighs the costs
of delay that PLD will incur in not being able to sell
DAVIDOFF fragrances without the batch codes until
a decision on the merits. As the district court found,
PLD is able to continue selling other products and
Davidoff products where the batch codes have not
been removed. Lastly, the injunction is not adverse
to the public interest, because the public interest is
served by preventing consumer confusion in the
marketplace. *See SunAmerica Corp. v. Sun Life
Assurance Co. of Canada,* 77 F.3d 1325, 1334 (11th
Cir.1996).

### VIII. CONCLUSION
The district court correctly decided that Davidoff
demonstrated a substantial likelihood of success on
the merits by showing a likelihood of consumer
confusion. Davidoff has also met the other three
elements necessary for a preliminary injunction.
Accordingly, the district court's order granting a
preliminary injunction is

AFFIRMED.

263 F.3d 1297, 60 U.S.P.Q.2d 1046, 14 Fla. L.
Weekly Fed. C 1225

**Briefs and Other Related Documents (Back to top)**

• 2001 WL 34121032 (Appellate Brief) Reply Brief
of Defendants-Appellants (Feb. 06, 2001)Original
Image of this Document (PDF)

• 2001 WL 34121029 (Appellate Brief) Brief of
Plaintiffs-Appellees (Jan. 05, 2001)Original Image of
this Document (PDF)

• 2000 WL 34004516 (Appellate Brief) Brief of
Defendants-Appellants (Nov. 01, 2000)Original
Image of this Document (PDF)

•                    00-14368              (Docket)
(Aug. 23, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT C

# CVS PHARMACY

BERGEN HALL, PARAMUS, NJ
TELEPHONE: 843-1121

REG#06 TRAN#1474 CSHR#010074 STR#264

```
TAXABLE
2 @   39.59              79.18T

2 ITEMS
   SUBTOTAL            79.18
   NJ 6.0% TAX          4.75
   TOTAL               83.93
   CASH                90.00
   CHANGE               6.07

   THANK YOU  COME AGAIN
JULY 29, 1998             3:02 PM
```