UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ZINO DAVIDOFF SA,

                Plaintiff,

v.

CVS CORPORATION,

                Defendant.

06 Civ. 15332 (RJS)

### DECLARATION OF CHRISTOPHER LICK IN SUPPORT OF PLAINTIFF'S MOTION FOR CONTEMPT SANCTIONS

I, Christopher Lick, hereby declare as follows:

1. I am a member of the bar of the state of New York and an associate at the firm Kilpatrick Stockton LLP, attorneys for Plaintiff Zino Davidoff SA ("Zino Davidoff"). I submit this declaration based on my personal knowledge in support of Plaintiff's motion for an order granting civil contempt sanctions against Defendant CVS Corporation ("CVS").

2. As set forth in the accompanying declarations of James Duggan, Michael Paviour and James Welch, CVS has continued to offer for sale and sell counterfeit and decoded DAVIDOFF COOL WATER fragrance products in disregard of this Court's Orders dated December 22, 2006 and June 14, 2007 (as amended on June 26, 2007) (collectively the "Orders"). "Decoded" products are products from which unique production codes have been removed or obliterated. As described more fully in Paragraphs 17-20 below, Zino Davidoff has endeavored to meet and confer with CVS to avert the need to file this motion, to no avail.

3. Accordingly, in this motion, Zino Davidoff seeks an Order (i) setting forth explicit procedures to ensure that CVS complies with this Court's December 22, 2006 and June 14, 2007 (as amended on June 26, 2007) Orders, (ii) fining CVS $10,000 for each day of non-

compliance after the date of the ruling on this motion; (iii) awarding Zino Davidoff 2.5% of CVS's net profits on the total sales of DAVIDOFF COOL WATER fragrance products for the period of December 22, 2006 to the date of the ruling on this motion and 49% of CVS's net profits on the total sales of DAVIDOFF COOL WATER fragrance products for the period of June 14, 2007 to the date of the ruling on this motion; and (iv) awarding Zino Davidoff its attorneys' fees and costs in connection with this motion. The exact number of decoded and counterfeit DAVIDOFF COOL WATER fragrance products sold by CVS during the above periods would be difficult if not impossible to determine, but we do know that counterfeit and decoded products represented 2.5% and 49%, respectively, of the total CVS inventory of DAVIDOFF COOL WATER products that we were allowed to inspect in January 2006 and May 2007 (see Paragraph 5 below).

4. On December 20, 2006, Zino Davidoff commenced an action for trademark infringement, unfair competition and dilution in violation of Sections 32(1) and 43(a) and (c) of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a) and § (c), and state law. The complaint alleged that CVS, despite repeated prior warnings, was continuing to sell counterfeit DAVIDOFF COOL WATER fragrances in multiple CVS pharmacies throughout the U.S. Zino Davidoff simultaneously filed a motion for a temporary restraining order and preliminary injunction. By order dated December 22, 2006 (annexed as Exhibit 1), this Court temporarily restrained the sale of counterfeit DAVIDOFF fragrances by CVS, ordered CVS to withdraw its inventory of DAVIDOFF COOL WATER men's 2.5 oz. eau de toilette ("EDT") from store shelves and permitted Zino Davidoff to inspect CVS's inventory. Specifically, this Court enjoined CVS from "knowingly importing…distributing…selling, offering for sale…or displaying any product bearing any simulation, reproduction, counterfeit, copy, or colorable imitation of any good or

2

product bearing the mark DAVIDOFF, the mark COOL WATER, the trade dress of Plaintiff's COOL WATER products or any other marks owned by Zino Davidoff." *Id.* This Court further ordered CVS to "implement a 'point of sale block' on all 2.5 ounce COOL WATER products," "that by or before January 11, 2007, Defendant will complete a 'product withdrawal' of all 2.5 ounce COOL WATER products…and will allow Plaintiff to inspect the removed products upon removal" and "that Defendant is to permit Plaintiff to inspect all undistributed inventory of any goods bearing the DAVIDOFF Marks." *Id.*

5.  In the course of this court-ordered inspection, Zino Davidoff's inspectors discovered an additional 836 counterfeit DAVIDOFF COOL WATER products as well as 16,600 decoded DAVIDOFF COOL WATER products destined for sale in CVS's drugstores. On February 7, 2007, Zino Davidoff amended its complaint to expand its factual allegations to include claims for relief based upon CVS's sale of decoded as well as counterfeit DAVIDOFF products. Zino Davidoff also advised this Court that it wished to move for a preliminary injunction to prevent the sale of such products or, alternatively, to proceed to an expedited trial on the merits if CVS would voluntarily agree not to sell counterfeit or decoded DAVIDOFF products pending trial. At a conference on March 2, 2007, CVS stated that it would not voluntarily agree to stop selling the decoded products. At the March 2 conference this Court confirmed that the December 22 Order was for all intents and purposes a preliminary injunction and CVS consented to treat the temporary restraining order as such.

6.  This Court (Karas, J.) held a preliminary injunction hearing on May 14-15, 2007, after which this Court issued an opinion and order on June 14, 2007 (amended on June 25, 2007 and June 26, 2007 respectively) (annexed as <u>Exhibit 2</u>) enjoining CVS from offering for sale or selling counterfeit and decoded DAVIDOFF fragrance products. The June 14, 2007 order also

enjoined CVS from obscuring the production code on DAVIDOFF fragrance products. Specifically, this Court enjoined CVS from "importing…distributing…selling, offering for sale…or displaying…counterfeit and decoded DAVIDOFF COOL WATER fragrance products" and from "obliterating, obscuring, or otherwise defacing any Unique Production Code or other bar code on any DAVIDOFF product or importing…producing, distributing…selling, offering for sale…or displaying any DAVIDOFF product with an obliterated, obscured or defaced Unique Production Code or other bar code." *Id.*

7. On or about June 22, 2007, June 27, 2007 and June 28, 2007, after this Court's June 14, 2007 Order, Zino Davidoff's investigator, Michael Paviour, purchased decoded DAVIDOFF COOL WATER fragrance products from CVS stores in Florida, Illinois and Michigan respectively.

8. On July 5, 2007, on behalf of Zino Davidoff, this firm wrote to Nicholas Fortuna, Esq., CVS's counsel in this matter (annexed as Exhibit 3), informing Mr. Fortuna that Zino Davidoff's investigator had purchased units of decoded DAVIDOFF COOL WATER men's EDT at CVS stores in Florida and Michigan after the issuance of this Court's June 14, 2007 Order. We provided Mr. Fortuna with pictures of one of the decoded units as well as the receipt for the purchase of the decoded unit. *Id.* We also brought to Mr. Fortuna's attention bogus production code 0172395837, which appears on counterfeit DAVIDOFF COOL WATER products. *Id.* CVS was also on actual notice that it had sold DAVIDOFF COOL WATER fragrances bearing bogus production codes 0173289680 and 0707283148. In response, we received a short letter from Mr. Fortuna dated July 17, 2007 (annexed as Exhibit 4), in which Mr. Fortuna stated that CVS was in the process of "retaining National In-Store to inspect and develop strategies for reviewing and sampling Davidoff products at CVS' 6200 stores to prevent

'decoded' Davidoff products from being offered for sale in these stores." Mr. Fortuna's response failed to provide a date when the inspection by National In-Store ("NIS") would begin, how long it would take, its scope, how NIS would handle suspect product and what steps CVS had taken up to that point to stop buying infringing DAVIDOFF fragrance product.

9. We sent a letter in response dated July 24, 2007 (annexed as Exhibit 5), in which we requested that Mr. Fortuna provide us with the specific details of NIS's and CVS's plans that were lacking in his July 17, 2007 letter. We also informed Mr. Fortuna that our investigators had purchased more decoded and counterfeit DAVIDOFF COOL WATER men's EDT 1.35 oz. and 2.5 oz. from multiple CVS stores in five states -- New York, New Jersey, Connecticut, Illinois and Florida -- during the period of June 22, 2007 through July 12, 2007. *Id.* Because of CVS's continued sales of counterfeit and decoded DAVIDOFF fragrance products after the issuance of the Orders, we requested that CVS put a temporary point of sale block on all DAVIDOFF fragrance products and withdraw all DAVIDOFF fragrance products to a single location, and offered to have our investigators inspect these products. *Id.*

10. Mr. Fortuna responded by letter dated July 30, 2007 (annexed as Exhibit 6), in which he briefly described a process in which NIS would inspect CVS's distribution centers but would only choose a sampling of CVS stores throughout the country in which it would inspect "the Davidoff products." Mr. Fortuna also assured us that CVS would remove "any product considered 'decoded' from the store shelves" and would remove all units of DAVIDOFF COOL WATER men's EDT 2.5 oz. found by NIS. *Id.* Mr. Fortuna failed to mention removing 1.35 oz. units of DAVIDOFF COOL WATER men's EDT, despite the fact that we had informed him that the majority of the counterfeit and decoded DAVIDOFF COOL WATER fragrance products purchased by our investigators after the issuance of the Orders were of the 1.35 oz. size.

5

11. We responded by letter dated August 3, 2007 (annexed as Exhibit 7), and expressed Zino Davidoff's concern that CVS's plan merely to sample stores across the country and conduct a one-time inspection of distribution centers failed to address the continued and wide-spread violation of the Orders. Because CVS's disclosed procedures for ensuring compliance with the Orders were inadequate to address Zino Davidoff's concerns regarding CVS's continued sale of counterfeit and decoded DAVIDOFF fragrance products, we proposed three concrete alternative options to CVS that would be acceptable to Zino Davidoff. *Id.* The three alternatives we proposed are as follows:

    i. CVS would put a temporary point of sale block on all DAVIDOFF fragrance products and consolidate all DAVIDOFF fragrance products at a single location, where Zino Davidoff's investigators would inspect the withdrawn products at CVS's expense. CVS would preserve until the end of the case as evidence any DAVIDOFF fragrance product identified as decoded or counterfeit by Zino Davidoff's inspectors.

    ii. CVS would put a temporary point of sale block on all DAVIDOFF fragrance products. It would quarantine all decoded products. CVS would then scan the production code of every coded unit of DAVIDOFF fragrance product in its stores or warehouses. CVS would then provide us with an electronic file, such as a Microsoft Excel file, of all the scanned production codes and the locations where those codes were found, which Zino Davidoff would review. After Zino Davidoff's review, we would inform CVS which codes are bogus. CVS would then remove from its store shelves and segregate in its warehouses those DAVIDOFF products with the bogus codes (as well as any decoded DAVIDOFF fragrance product). CVS would consolidate all decoded DAVIDOFF product and all DAVIDOFF product with a bogus code, as identified by Zino Davidoff, at a single warehouse location and would preserve such product as evidence until the matter concludes.

    iii. CVS would put a temporary point of sale block on all DAVIDOFF fragrance products. It would quarantine all decoded products. Zino Davidoff would in turn, pursuant to a confidentiality agreement, provide CVS and its inspectors with a list of every known bogus production code. CVS's employees and/or inspectors would complete an inspection of every remaining unit of coded DAVIDOFF product within ten (10) days of receipt of this letter. CVS would remove from its store shelves and segregate in its warehouses any DAVIDOFF product with a bogus code. CVS would consolidate all decoded DAVIDOFF product and all DAVIDOFF product with a bogus code at a single warehouse location and would preserve such product as evidence until the matter concludes.

6

12. In a letter dated August 8, 2007 (annexed as Exhibit 8), Mr. Fortuna relayed that CVS refused to agree to any of the three options we proposed, would not put a temporary point of sale block on any DAVIDOFF fragrance products and would not withdraw any DAVIDOFF fragrance products in order to allow our investigators to inspect them. Mr. Fortuna did acknowledge that CVS was aware of the bogus production codes 0173289680 and 0172395837, and claimed that "NIS will remove product that does not have a batch code, unique production code," or has one of the above bogus production codes. *Id*. Mr. Fortuna also alleged that "[a]ny product found to be decoded or counterfeit will be set aside and held by CVS," but now informed us that instead of NIS's inspections being completed in August, those inspections would not be finished until the end of September. *Id*.

13. Because CVS (i) stated that it would not complete its inspection until the end of September 2007, approximately nine months and three and a half months after the issuance of the Orders respectively; (ii) refused to put a temporary point of block sale on all DAVIDOFF products to prevent infringing product from reaching consumers; (iii) would only look for counterfeit products bearing two bogus production codes; and (iv) refused to implement adequate measures to ensure that it will not stock its stores' shelves with any new infringing DAVIDOFF products after the NIS inspection, Zino Davidoff requested this Court's assistance in insuring CVS's compliance with the Orders by letter dated August 13, 2007 (annexed as Exhibit 9).

14. Mr. Fortuna sent a letter to this Court dated August 14, 2007 (annexed as Exhibit 10) responding to our August 13, 2007 letter. In addition to misstating the number of decoded and counterfeit DAVIDOFF fragrance products purchased from CVS stores by Zino Davidoff's investigators after this Court's June 14, 2007 Order, Mr. Fortuna mischaracterized my conversations with him. Mr. Fortuna claims that I told him that Zino Davidoff would not supply

CVS with "any information or guidelines" to aid CVS in its inspections and that we would not provide "any other information than what has been previously provided." *Id.* I never made such statements, and in fact discussed with Mr. Fortuna that Zino Davidoff was willing to provide CVS and its inspectors with a list of every known bogus production code, so long as CVS agreed to an appropriate confidentiality agreement. In his August 14 letter, Mr. Fortuna also assured the Court that CVS hired NIS "because of its good reputation and (in CVS' experience) reliability," that "NIS will remove any decoded or counterfeit products from shelves…and set [them] in the manager's office for preservation" and that "[a]ny questionable products will be removed from CVS store shelves and preserved." *Id.*

15. In response to the parties' respective letters, this Court scheduled a conference on September 12, 2007 (transcript annexed as Exhibit 11). At the conference, Mr. Fortuna claimed that NIS was conducting a thorough inspection of "every single bottle in every single [CVS] store." *Id.* at 3. And Mr. Fortuna assured the Court that NIS was taking any DAVIDOFF fragrance products off the shelves that were decoded or bore the bogus production codes 0173289680 and 0172395837. *Id.* During the conference, the only procedure described by Mr. Fortuna that CVS had put in place to ensure that it would be in compliance with the Orders was the NIS inspection. Mr. Fortuna admitted that CVS only decided to inspect the DAVIDOFF fragrance products in its inventory after we informed him that CVS was violating the Orders. *Id.* at 9.

16. Following the conference, we sent Mr. Fortuna an e-mail on September 13, 2007 requesting certain information that Mr. Fortuna had agreed to provide us with after the September 12 conference. Mr. Fortuna finally responded by e-mail on September 18, 2007 (annexed as Exhibit 12), in which he confirmed that NIS's inspection would be fully completed

8

by that same day, and that NIS was removing any product from CVS's shelves that did not have a production code or bore the 0173289680 and 017239537 bogus production codes. Mr. Fortuna also stated that he had received an interim report from NIS on the inspection of 1617 CVS stores, and that he would send that interim report to us that day. *Id.*

17.     Mr. Fortuna did not send the NIS interim report as promised on September 18, and we received it only after I followed up with a call to Mr. Fortuna on September 20, 2007. In his September 18 e-mail discussed above (Exhibit 12), Mr. Fortuna conceded that the report was very confusing and alleged that he would be receiving a "more user friendly report in the next two days," which we never received. Despite the lack of clarity of the NIS interim report (representative pages annexed as Exhibit 13), it did disclose that CVS had been offering for sale a sizeable number of decoded DAVIDOFF COOL WATER fragrance products and counterfeit DAVIDOFF fragrance products with bogus production code 0172395837. For example, the bogus production code 0172395837 is listed repeatedly in the interim report in connection with DAVIDOFF COOL WATER fragrance products, and many of the inspectors' comments make clear that they were finding decoded DAVIDOFF COOL WATER products. Based upon the comments by the NIS inspectors, it was also evident that CVS has been stocking its stores with DAVIDOFF COOL WATER fragrance products on which the production code was obscured by security tags or stickers.

18.     Because CVS continued to express its willingness to cooperate, Zino Davidoff agreed to temporarily postpone making a motion for civil contempt sanctions based upon the understanding that CVS would provide Zino Davidoff with a user-friendly final NIS report and that CVS was taking all reasonable steps to comply with the Orders now that it had retained NIS. By letter dated September 20, 2007 (annexed as Exhibit 14), Zino Davidoff informed both this

Court and Mr. Fortuna that Zino Davidoff was postponing a contempt motion, but in explicitly right to bring such a motion in the future.

19. On October 3, 2007, we finally received the "final" NIS report from Mr. Fortuna, which consisted of a massive and fairly unclear spreadsheet (representative pages annexed as Exhibit 15). The final NIS report discloses that as of the time of NIS's inspections in September 2007, CVS was still offering for sale and selling decoded DAVIDOFF fragrance products and counterfeit DAVIDOFF fragrance products with the two bogus production codes known to CVS in numerous stores throughout the country. Because of the lack of clarity of the final NIS report, we are at this time unable to determine exactly how many stores were carrying these infringing products and how many infringing products were in each store. For example, based upon the report it appears that DAVIDOFF COOL WATER men's EDT 1.35 oz. bearing the bogus production code 0172395837 was found at a CVS store in Sun City, Arizona, but it is not apparent how many units were found. *See id.* at Store 7. In addition, based upon the comments of the NIS inspectors, CVS's sale of DAVIDOFF COOL WATER products with obscured production codes was wide-spread, and in many cases NIS inspectors failed to look under the security tag/sticker to determine whether the DAVIDOFF fragrance product was decoded or counterfeit. For example, in commenting on the inspection of a CVS store in Indianapolis, Indiana, an NIS inspector wrote: "[c]ouldn't get [production codes] due to security tags over the number....It's easier to list this way then try to figure out how to fill in questions." *See id.* at Store 45.

20. I have made repeated requests of Mr. Fortuna to provide a more "user friendly" report as promised, and despite Mr. Fortuna's advice that it was in the process, on October 10, 2007 he informed me that NIS had not in fact been preparing a "user friendly" report (a

transcript of an October 23, 2007 voicemail from Mr. Fortuna annexed as Exhibit 16). To date we have not received any report that is any more comprehensible than the excel spreadsheets provided by Mr. Fortuna and which Mr. Fortuna himself has admitted on multiple occasions are unclear. *See* Exhibit 16 and Exhibit 17 (a September 20, 2007 e-mail from Mr. Fortuna).

21. Since the completion of NIS's inspection and our receipt of the final NIS report, Zino Davidoff's investigators have continued to purchase decoded DAVIDOFF COOL WATER fragrance products and counterfeit DAVIDOFF COOL WATER fragrance products from CVS stores in numerous states throughout the country, including Connecticut, New York, New Jersey, Illinois and Michigan. The counterfeit DAVIDOFF fragrance products purchased by our investigators either had the bogus production code 0172395837 or lacked a production code.

22. As mentioned above, and as this Court found, out of the 33,369 units CVS made available to Zino Davidoff in January and May 2007 during the Court-ordered inspection, 836 were counterfeit and 16,600 were decoded, which equals 2.5% counterfeit and 49% decoded. *See* Exhibit 2.

23. Because despite its repeated assurances, CVS is either unwilling or unable to stop the sale of decoded and counterfeit DAVIDOFF fragrance products, and because we are unable to trust CVS's assertions regarding these sales, Zino Davidoff has instructed us to bring this motion for civil contempt sanctions.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Date: New York, New York
January 4, 2008

Christopher Lick

11